# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | **24 CR 176** |
| | ) | **Hon. John Kness** |
| | ) | |
| HUGO PINZON | ) | |

## DEFENDANT'S MOTION TO QUASH SEARCH WARRANT
## AND SUPPRESS ILLEGALLY SEIZED EVIDENCE

NOW COMES the Defendant, Hugo Pinzon, by and through his attorney, Michael D. Krejci, and respectfully moves this Honorable Court, pursuant to the Fourth Amendment to the United States Constitution, and Fed. R. Crim. Pro. 12(b)(3)(C) and 41(h), to enter an order suppressing evidence seized during the execution of a search warrant. In support of this motion, the defendant states as follows:

1. Hugo Pinzon is charged with possession of a controlled substance with intent to distribute, and distribution of a controlled substance, in violation of 21 U.S.C. 841(a)(1), felon in possession of a firearm, in violation of 18 U.S.C. 922(g)(1), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. 924(c)(1)(A).

2. On March 22, 2024, at 4:07 p.m., a search warrant was issued by Magistrate Judge Keri L. Holleb Hotaling. *See* attached Exhibit A. The search warrant authorized the search of the premises at 1537 N. Western Avenue, Chicago, Illinois 60622 and the seizure of narcotics, residency documents, paraphernalia, money, firearms, and records, among other things. Hugo Pinzon had a reasonable expectation of privacy in the premises to be searched. *See* attached Government's Exhibit B, Application and Affidavit for search warrant sub-title

subject residence., which sets forth the Defendant's legal basis for his expectation of privacy.

3. The search warrant was issued based upon a Complaint for Search Warrant authored by Homeland Security Investigations Tasc Force Officer John P. McDonnell. *See* attached Exhibit B. The four corners of that complaint did not establish that probable cause existed to believe that evidence of a crime would be located at 1537 N. Western Avenue, First Floor Unit, Chicago, Illinois. The complaint was plainly deficient, and cannot be saved by the good faith doctrine.

4. Initially, the search warrant was issued telephonically. McDonnell did not even appear before the magistrate. The complaint essentially indicates that probable cause may have existed to search the residence sworn to on March 22, 2024. The warrant was executed on April 4, 2024. Some 13 days after the issuance of the search warrant.

5. At no time did the CSI ever step foot into the residence at 1537 N. Western Avenue, in Chicago, Illinois. Moreover, the last time the CSI ever allegedly received narcotics from the Defendant occurred on the street, on February 14, 2024. This was 36 days before the complaint for a search warrant was authorized. Thus, absent any statement by the CSI as to anything being stored in the residence the issuance of the warrant had become stale. The critical question is, "whether the information contained in the affidavit when presented to the judge established that there was a fair probability that [evidence] would still be found at (the location of the search)". In other words, a warrant is stale if the probable cause, while sufficient at some point in the past, is now insufficient as to evidence at a specific location. United States v. Spikes, 158 f.3d 913, 923 (6th Cir. 1998). Here, there is no evidence whatsoever that there were any narcotics being stored at 1537 N. Western

Avenue, in Chicago, Illinois. There are no supporting affidavits supporting any regularity of drug sales.

6. Tasc Force Officer John McDonnell provided approximately 11 pages of information to the magistrate that McDonnell deemed "Facts Supporting Probable Cause." Of those 11 pages, portions of six pages simply mention the 1537 N. Western Avenue residence. The information provided did not come close to establishing probable cause that would permit an intrusion into a citizen's home.

7. Pinzon submits that none of these paragraphs in the complaint contain purported facts that would indicate that the residence at 1537 N. Western Avenue, Chicago Illinois contained narcotics.

8. The CSI who was at the direction of law enforcement never stepped foot inside the residence nor did he ever state to law enforcement that there was narcotics stored in the residence.

9. At no time did any of the surveillance agents ever see the Defendant exit the residence carrying packages believed to contain narcotics.

10. At no time was he ever directly followed, leaving the residence to meet with the CSI and subsequently deliver narcotics. There is no inference to be gained that the residence contained evidence of a crime.

11. The First Controlled Buy occurred on January 16, 2024, at a pre-arranged location on a public way not at the subject residence at 1537 N. Western Avenue in Chicago Illinois.

12. The Second Controlled Buy occurred on January 25, 2024, again at a location on a public way not at the residence at 1537 N. Western Avenue, Chicago Illinois.

13. The Third Controlled Buy occurred after the CSI placed as unrecorded FaceTime video call to the Defendant to arrange to buy a "quarter key" to an address on the North Side of Chicago not at the residence at 1537 W. Western Avenue, Chicago, Illinois. That same day, the Defendant's vehicle was traced to a fast-food parking lot in Highland Park before heading back to Chicago at the pre-arranged location previously set up with the CSI. Surveillance video at the fast-food parking lot allegedly showed the Defendant exchanging duffle style bags with a subject in another vehicle.[1] Later Pinzon arrived and met up with the CSI and the exchange happened at the pre-determined location. After the transaction Pinzon told the CSI that he was going into Chicago to pick up "loud" meaning cannabis.

14. Pinzon's vehicle was tracked to downtown Chicago and Chicago Police conducted a traffic stop and recovered two pounds of marijuana from his vehicle.

15. On March 20, 2024, Pinzon exited the residence at Western Avenue and carried a grocery bag before entering Target Vehicle 4. He drove the vehicle to two different locations before returning to the residence and entering the residence empty handed. At no time was there ever any indication given that these were narcotic transactions. There was no surveillance information as to the size of the grocery bag or if it appeared weighted. Simply exiting a residence carrying a grocery bag without any further corroboration is insufficient to establish probable cause.

16. Later that same day a black Chevrolet Malibu driven by Kevin Martinez was seen parked in front of the residence and surveillance saw him enter inside. He later returned with the Defendant exiting outside the residence carrying a brown paper bag that was rolled at the

---

[1] Pinzon has not yet received this surveillance video.

4

top that was placed inside his trunk. The Defendant entered Target Vehicle 4, and they drove away separately.

17. Based upon that paltry information, Tasc Force Agent John P. McDonnell submitted that there was probable cause to believe that evidence, instrumentalities, fruits, and contraband would be located at 1537 N. Western Avenue, First Floor Unit, Chicago Illinois.

18. Hunches, suppositions, and surmisals are not probabilities. What bags or packages could have or might have contained does not make it more likely than not that they did contain drugs.

19. Here is what agents knew about 1537 N. Western Avenue at the time they applied for a warrant to search it: January 2024 an informant relayed information that the Defendant Hugo Pinzon was selling narcotics. Starting in mid-January 2024, Three Controlled Buys were set up at an address not at the residence at 1537 N. Western Avenue, Chicago Illinois. The last Controlled Buy occurred on February 14, 2024, again not at or near the residence. There was no indication that this residence had ever come up in the course of their four-month investigation. No intercepted packages had been designated for that address, and no IP Address registered to that location was used to track suspicious packages. No conversations were overheard or intercepted indicating that a drug transaction took place inside of the residence or that narcotics was being stored.

20. The Supreme Court has stated that probable cause to search exists where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found. *Ornelas v. United States*, 517 U.S. 690, 696 (1996).

21. A court that is asked to issue a search warrant must determine if probable cause exists by making a practical, common sense determination whether, given all the circumstances, there exists a fair probability that contraband or evidence of a crime will be found in a particular place. *United States v. Walker*, 237 F.3d 845, 850 (7th Cir. 2001). To uphold a challenged warrant, a reviewing court must find that the affidavit provided the issuing court with a substantial basis for determining the existence of probable cause. Probable cause denotes more than a mere suspicion, but does not require certainty. *United States v. Ellery*, 678 F.2d 674, 677 (7th Cir. 1982).

22. Where, as here, the affidavit is the only evidence presented to support the issuance of a warrant, "the warrant must stand or fall solely on the contents of the affidavit." *United States v. Roth*, 391 F.2d 507, 509 (7th Cir. 1967). The affidavit needs to allege specific facts that establish a reasonable probability that the items sought are likely to be at the location designated. *United States v. Malin*, 908 F.2d 163, 166 (7th Cir. 1990). Courts have settled that the critical element in a reasonable search is not that the owner of the property is suspected of a crime but that there is reasonable cause to believe that the specific thing to be searched for and seized is located on the property to which entry is sought. *Id*. at 165, quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 557 (1978).

23. The magistrate, however, cannot simply ratify the bare conclusions of another. *See Illinois v. Gates*, 462 U.S. 213, 239 (1983); *Aguilar v. Texas*, 378 U.S. 108, 113-14 (1964).

24. Here, the language of the complaint in no way established that evidence of a crime would be present at 1537 N. Western Avenue in Chicago. Instead, the complaint established that a CSI made Three Controlled Buys that occurred in a vehicle on a public way not near the residence that was searched.

25. Conspicuously absent from the information provided to the magistrate judge was any concrete indication that evidence of a crime would be present at that location at the time of the search. All the agents knew was that a CSI made Three Controlled Buys. The last being 36 days before the issuance of the search warrant. There was no conversation had between the parties as to where the narcotics were allegedly stored. The lack of information adduced did not amount to probable cause, and it is not even a close call.

26. Here, the magistrate merely ratified the bare conclusions of Tasc Force Agent McDonnell.

27. Under *United States v. Leon*, 468 U.S. 897, 920-24 (1984), the suppression of evidence seized pursuant to a search warrant that is later declared invalid is inappropriate if the officers who executed the warrant relied in good faith on the issuing judge's finding of probable cause. However, a defendant can rebut this presumption of good faith by showing (1) the issuing judge abandoned his detached and neutral role, (2) the officers were dishonest or reckless in preparing the affidavit, or (3) the warrant was so lacking in probable cause as to render the officer's belief in its existence entirely unreasonable. *United States v. Otero*, 495 F.3d 393, 398 (7th Cir. 2007). Considering the available facts, Pinzon posits that the good faith doctrine is inapplicable for all three reasons: the issuing judge abandoned her neutral role, the agent recklessly prepared the affidavit,[2] and the warrant was so lacking in probable cause to render any belief in its existence completely unreasonable.

---

[2] It appears that the Application and Affidavit for the Search Warrant was prepared by Leah K. Roth, a Special Agent of the Federal Bureau of Investigation but was signed by Tasc Force Agent McDonnell. See Exhibit B. This appears to be an error upon information and belief SA Leah K. Roth was not involved in this case.

28. The purpose of the exclusionary rule is to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals. *United States v. Martinez-Fuerte*, 428 U.S. 543, 554 (1976).

29. The warrant in this case was so lacking in probable cause that any belief that probable cause existed was baseless. Tasc Force Agent McDonnell's affidavit provided a fast and loose rendition of the facts, and did not satisfy the requirements of the Fourth Amendment. By authorizing the search warrant, Judge Keri L. Holleb Hotaling abandoned her role as a detached and neutral magistrate. Accordingly, the evidence obtained pursuant to this faulty search warrant must be excluded from this case. Moreover, the warrant was stale. It was issued some 36 days after the last transaction with the CSI.

WHEREFORE, Hugo Pinzon respectfully moves this Honorable Court to review the complaint for search warrant and search warrant, and enter an order quashing the unlawful search warrant and suppressing all evidence gathered pursuant thereto.

Respectfully submitted,

/s/Michael D. Krejci
Michael D. Krejci and Associates, L.L.C.
1770 Park Street, Suite 205
Naperville, Illinois 60563
Tel.     630/388-0600

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that in accordance with Fed. R. Civ. P. 5., LR 5.5 and the General Order on Electronic Case Filing (ECF), this document and the following:

**DEFENDANT'S MOTION TO QUASH SEARCH WARRANT
AND SUPPRESS ILLEGALLY SEIZED EVIDENCE**

was served pursuant to the district court's ECF system as to ECF filers on September 9, 2024.

/S/Michael D. Krejci
Michael D. Krejci and Associates, L.L.C.
1770 Park Street, Suite 205
Naperville, Illinois 60563
Tel.    630/388-0600